

Upon the foregoing reasons,

IT IS ORDERED that First Savings & Loan Association's motion for rehearing is DENIED.

R. Byrn Bass, Jr., George Thompson, Lubbock, Tex., for debtor.

J. Maxwell Tucker, Dallas, Tex., for MBank.

John Huffaker, Larry Sherman, Amarillo, Tex., for First Nat. Bk. of Amarillo.

Robert B. Cousins, Jr., Dallas, Tex., H. Grady Terrill, Barrett–Crofoot, Barrett–Crofoot Cattle, Inc., Ed C. Barrett and Jay Crofoot, Lubbock, Tex., for defendants.

### In re B C & K CATTLE COMPANY, Debtor.

### Bankruptcy No. 387–35952–SAF–7.

United States Bankruptcy Court, N.D. Texas, Dallas Division.

Feb. 16, 1988.

ORDER

STEVEN A. FELSENTHAL, Bankruptcy Judge.

On Barrett–Crofoot, Inc.'s ("Barrett–Crofoot") motion to dismiss, the court determines that a general partner who has filed for bankruptcy protection under Chapter 11 of the Bankruptcy Code may file an involuntary petition against its partnership. On January 13, 1988, the court held a hearing on the motion which requests the court to dismiss the involuntary bankruptcy petition filed by J.P.'s Family, Inc. ("J.P.'s Family") against B C & K Company ("B C & K"). Barrett–Crofoot, the trustee for J.P.'s Family, and the First National Bank of Amarillo ("FNB") appeared by counsel at the hearing. After entertaining argument by counsel, the court took the motion under advisement. The court now concludes that the motion to dismiss must be denied.

On September 2, 1987, J.P.'s Family filed a voluntary Chapter 11 petition. J.P.'s Family and Barrett–Crofoot are the general partners of B C & K, a Texas general partnership. On November 10, 1987, J.P.'s Family filed an involuntary Chapter 7 petition against B C & K.

In its motion to dismiss, Barrett–Crofoot, alleges that J.P.'s Family, "does not have standing or authority to file the Involuntary Petition" and that the petition fails to state a claim.[1] Specifically, Barrett–Crofoot alleges that the partnership dissolved when J.P.'s Family filed its Chapter 11

---

1. Because the motion to dismiss does not state why Barrett–Crofoot contends that the petition fails to state a claim and Barrett–Crofoot did not pursue this argument at the January 13 hearing, the court will not address this argument.

petition and therefore J.P.'s Family had no authority to file the involuntary petition. Barrett–Crofoot relies on *In re Sunset Developers*, 69 B.R. 710 (Bankr.D.Idaho 1987), as the basis for its argument.

■ In *Sunset Developers*, Laughlin, a general partner in Sunset Developers, an Idaho general partnership, filed a voluntary Chapter 11 petition, in his individual capacity. Shortly thereafter, Laughlin filed an involuntary Chapter 11 petition against the partnership. Kennedy, a non-petitioning general partner, alleged that Laughlin did not have the authority to file the involuntary petition because he had previously filed a Chapter 11 petition in his individual capacity. The *Sunset Developers* court agreed.

Initially, the *Sunset Developers* court noted that:

> The Partnership Agreement provides on page 12 and 13 that a partner is in default if he filed for bankruptcy either on behalf of the partnership or individually. On page 13 and 14 of the Agreement it provides that upon default of a partner, the defaulting partner "shall have no right to vote upon or otherwise participate in management of the partnership."

*Id.* at 711. The court then reasoned that:

> Idaho Uniform Partnership Law dissolves a partnership when a partner files an individual bankruptcy or by express will of any partner.... Dissolution of a partnership does not terminate it. The Partnership continues until the winding up of partnership affairs is completed. Dissolution terminates all authority of any partner to act for the partnership.
>
> By filing his individual bankruptcy petition Laughlin transferred his partnership interest to the bankruptcy estate. His partnership interest is his share of the profits and surplus. The Court can see no reason that this interest should change character. The estate, and therefore the Debtor-in-Possession as an assignee, receives no managerial or voting rights. According to the Idaho Code and the Sunset Developer partnership agreement, on November 24, 1986, Laughlin as

a debtor-in-possession had no authority as a general partner to bind the partnership to an involuntary bankruptcy petition.

*Id.* at 712 (footnotes omitted). Having carefully reviewed the applicable law, this court disagrees with the *Sunset Developers* court's analysis.

The Code permits a general partner to file an involuntary petition against a partnership. 11 U.S.C. § 303(b)(3); *In re Wallen*, 43 B.R. 408, 410 (Bankr.D.Idaho 1984). The *Sunset Developers* court concluded that a general partner who is a debtor under Chapter 11 may not file an involuntary petition against the partnership because "[d]issolution terminates all authority of any partner to act for the partnership." Under § 303, however, a general partner files an involuntary petition against, not for, the partnership. By filing an involuntary petition against a general partnership, a general partner is acting as an adverse party. *See* Bankr.R. 1011, Advisory Committee Notes. As long as the general partner is considered to be a member of the partnership after dissolution under state law, it may file an involuntary petition against the partnership. *See* H.R. 8200, H.R.Rep. No. 95–595, 95th Cong., 1st Sess. p. 196 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6157 ("Title 11 does not define 'partner' or 'partnership'; the definitions are left to nonbankruptcy law as construed by the bankruptcy court.")

In Texas, dissolution does not terminate a partnership; a dissolved partnership continues to exist until it is wound up. *Kelly Associates, Ltd. v. Aetna Casualty and Surety Co.*, 681 S.W.2d 593, 596–97 (Tex. 1984); Tex.Rev.Civ.Stat.Ann. art. 6132b, § 30 (Vernon 1970). A general partner is a member of the dissolved partnership until the partnership is wound up since " '[i]t is only upon termination that the final partnership relationship ceases to exist.' " *Kelly Associates*, 681 S.W.2d at 597 (quoting *Woodruff v. Bryant*, 558 S.W.2d 535, 539 (Tex.Civ.App.1977)); *see Turner v. Lee (In re Minton Group, Inc.)*, 46 B.R. 222, 224 (S.D.N.Y.1985); *Connolly v. Nuthatch*

*Hill Associates (In re Manning)*, 37 B.R. 755, 758 (Bankr.D.Colo.1984). Accordingly, J.P.'s Family was a general partner of B C & K at the time it filed the involuntary petition and, therefore, had the authority to file the involuntary petition. *See e.g.*, B. Weintraub and A. Resnick, *Bankruptcy Law Manual*, § 205[5], 2–17 (1986).

▪ Even if Texas law prohibits a bankrupt general partner from filing an involuntary petition against the partnership, the Code overrides this prohibition. *See Perez v. Campbell*, 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971). The Code authorizes a general partner to file an involuntary petition against a partnership. 11 U.S.C. § 303(b)(3). Congress has not dictated that to be eligible to file an involuntary petition against a partnership, the general partner cannot be a debtor under the Code. The Code provides that if all the general partners are debtors under the Code, a general partner, or a trustee of a general partner, may file an involuntary petition against the partnership. 11 U.S.C. § 303(b)(3)(B). By addressing the specific situation when all general partners are debtors under the Code, Congress did not intend to prohibit one bankrupt partner from filing an involuntary petition against the partnership. Rather, Congress enacted § 303(b)(3)(B) to clarify the existing law when all general partners are debtors. Under the Bankruptcy Act of 1898, if all the general partners were adjudged bankrupt, the partnership was automatically adjudged bankrupt. *See* Collier on Bankruptcy, § 5.36, p. 753 (14th ed. 1978). It was not necessary to file a petition to put the partnership into bankruptcy. *Id.* at 754 n. 1. Section 303(b)(3)(B) is merely an adaptation of that provision of the Act. *See* Report of the Commission on the Bankruptcy Laws of the United States, p. 76 (July 1973). Therefore, Congress has provided a bankrupt partner with the authority to file an involuntary petition against a partnership. Because Congress is empowered to enact a uniform bankruptcy law, any state law that conflicts with the Code is overridden. Thus, J.P.'s Family was entitled to file the involuntary petition even if Texas law were to the contrary.

This analysis has assumed that J.P.'s Family's Chapter 11 petition dissolved the partnership. Texas partnership law provides that the partnership dissolves when a partner files an individual bankruptcy petition. Tex.Rev.Civ.Stat.Ann. art. 6132b, § 31 (Vernon 1970). That provision constitutes part of the Uniform Partnership Act. Several authorities suggest that the Uniform Partnership Act addresses a liquidation bankruptcy filing under Chapter 7 by a partner not a reorganization petition under Chapter 11. They reason that a general partner's filing of a Chapter 11 petition in his individual capacity does not dissolve the partnership. *See In re Safren*, 65 B.R. 566, 570 (Bankr.C.D.Cal. 1986); Eibl, *Strategies for Partners Under the Bankruptcy Code When the Partnership is Insolvent*, 61 Am.Bankr.L.J. 37, 52 (1987); Kaster and Cymbler, *The Impact of a General Partner's Bankruptcy Upon the Remaining Partners*, 21 Real Prop. Prob & Tr.J. 539, 540 (1986); Kennedy, *Partnerships and Partners Under the Bankruptcy Reform Act and the New (Proposed) Bankruptcy Rules*, 27 St. Louis U.L.J. 507, 520 (1983). Under that analysis, J.P.'s Family's Chapter 11 filing did not dissolve B C & K. The *Sunset Developers* court did not address this distinction.

Because, J.P.'s Family had standing to file the involuntary petition, Barrett–Crofoot's motion to dismiss must be denied.

Upon the foregoing reasons, IT IS ORDERED that Barrett–Crofoot, Inc.'s motion to dismiss is DENIED. IT IS FURTHER ORDERED that the parties shall obtain a setting for a hearing on any substantive challenges to the petition.