**In re CLINTON COURT, A Partnership, Debtor.**

**Bankruptcy No. 93–13012S.**

United States Bankruptcy Court, E.D. Pennsylvania.

Oct. 6, 1993.

John L. Jenkins, Philadelphia, PA, for debtor.

Arthur S. Gabinet, Dechert Price & Rhoads, Philadelphia, PA, for Greater New York Sav. Bank.

Frederic Baker, Ass't. U.S. Trustee, Philadelphia, PA.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

### A. INTRODUCTION

The issue before this court is whether a bankruptcy filing by one of two general partners dissolved a partnership and prevented the non-debtor general partner of that partnership from filing a bankruptcy on its behalf. Consistent with decisions of the immediate past Chief Judge of this court in *In re Rittenhouse Carpet, Inc.*, 56 B.R. 131, 132–33 (Bankr.E.D.Pa.1985); and *In re Fidelity America Mortgage Co.*, 10 B.R. 781, 782–83 (Bankr.E.D.Pa.1981) (per GOLDHABER, CH.J.), and the present Chief Judge of this court in *In re Petralex Stainless, Ltd.*, 78 B.R. 738, 741–42 (Bankr.E.D.Pa.1987) (per TWARDOWSKI, CH. J.), we hold that the instant bankruptcy filing on behalf of the partnership is not barred.

### B. PROCEDURAL AND FACTUAL HISTORY

CLINTON COURT, a Partnership ("the Debtor"), filed the Chapter 11 bankruptcy case in question on May 18, 1993. On August 24, 1993, the Debtor's secured creditor, the Greater New York Savings Bank ("the Greater"), filed a motion ("the Motion") seeking, alternatively, to dismiss this case or to obtain relief from the automatic stay to foreclose against the Debtor's principal asset, a 91–unit residential apartment complex located at 931 Clinton Street, Philadelphia, Pennsylvania. On September 22, 1993, the date of the hearing on the Motion, the parties agreed, as memorialized in an Order of September 23, 1993, that the aspect of the Motion seeking dismissal would be resolved on a Stipulation of Facts and a series of Briefs to be submitted by the parties on or before October 5, 1993. The aspect of the Motion seeking relief from the automatic stay was carried over to October 20, 1993, the date of a hearing on the Debtor's draft of a Disclosure Statement accompanying its proposed Plan of Reorganization.

The Stipulation provided that the Debtor was a Pennsylvania general partnership, of which Michael J. Asbell and Robert R. McMurtrie are (or were) co-general partners. On September 12, 1990, McMurtrie filed a bankruptcy case in the District of New Jersey, which was converted to a Chapter 7 asset case on June 8, 1992, and continues to be administered by a trustee. The trustee has taken no action regarding McMurtrie's interest in the Debtor.[1] Asbell filed the instant voluntary Chapter 11 case on behalf of the Debtor, apparently with McMurtrie's consent, on May 18, 1993.[2]

### C. DISCUSSION

The Greater argues that the Debtor was dissolved, as a matter of law, upon McMurtrie's bankruptcy filing in light of 15 Pa.C.S. § 8353(5), which provides that dissolution of a Pennsylvania general partnership is caused by, *inter alia*, "the bankruptcy of any partner or the partnership." This statute, argues The Greater, transformed the Debtor, upon McMurtrie's bankruptcy filing, into a sole proprietorship owned by Asbell, an entity which it argues cannot be a debtor. *See In re T.W. Koeger Trucking Co.*, 105 B.R. 512, 515 (Bankr.E.D.Mo.1989) (a sole proprietorship cannot be a debtor).

While acknowledging the presence of *Rittenhouse Carpet*, which holds to the contrary for reasons explained at page 59 *infra*, The Greater argues that "the mistaken reasoning" of that case was "identified" in *In re Phillips*, 966 F.2d 926, 933–35 (5th Cir.1992), the only Court of Appeals decision to consider the impact of a partner's bankruptcy filing upon a partnership.

*Phillips* concerned a partnership formed by a now-divorced couple. *Id.* at 928. In February, 1988, prior to any pertinent bankruptcy filings, a Texas state court found that the husband had breached his fiduciary duties to the wife as the partnership's sole general partner and, *inter alia*, ordered the partnership dissolved. In January, 1989, and

---

1. Although taking no action might be sufficient to effect a rejection of McMurtrie's executory partnership contract, *see* 11 U.S.C. § 365(d)(1), we have no evidence in this record as to precisely what has occurred in McMurtrie's bankruptcy.

2. We make this assumption because The Greater does not claim that Federal Rule of Bankruptcy Procedure 1004(a) precludes the instant filing.

February, 1989, the husband filed voluntary bankruptcy petitions for himself individually and the partnership, respectively.

The *Phillips* court did expressly disagree with the holding of another leading case involving the effect of a partner's bankruptcy filing upon a partnership, *In re Safren*, 65 B.R. 566, 569–70 (Bankr.C.D.Cal.1986), insofar as *Safren* held that a debtor under Chapter 11 of the Bankruptcy Code was not the equivalent of a "bankrupt" under California's enactment of the Uniform Partnership Act. 966 F.2d at 931–32.

However, *Rittenhouse Carpet* was not based upon this conclusion of the *Safren* court, but upon the ground that a partnership agreement is an executory contract which cannot, pursuant to 11 U.S.C. § 365(e)(1),[3] be affected by an *ipso facto* clause, *i.e.*, a provision of law or contract that a bankruptcy filing *per se* will terminate or modify the contract. 56 B.R. at 132–33. The *Phillips* court does not repudiate the holding of *Rittenhouse Carpet* on its own facts, but merely holds that the partnership agreement in issue in that case was no longer executory at the time of the husband's bankruptcy filings for himself and the partnership because the partnership had been dissolved by a prepetition state court decree. 966 F.2d at 935.

In addition to *Petralex, supra,* decided by Chief Judge Twardowski, several cases in other jurisdictions have followed *Rittenhouse Carpet. See In re Todd,* 118 B.R. 432, 435 (Bankr.D.S.C.1990); *In re Hawkins,* 113 B.R. 315, 316–17 (Bankr.N.D.Tex.1990); *In re Cardinal Industries, Inc.,* 105 B.R. 834,

849 (Bankr.S.D.Ohio 1989); *In re Priestly,* 93 B.R. 253, 262 n. 9 (Bankr.D.N.M.1988); and *In re Corky Foods Corp.,* 85 B.R. 903, 904 (Bankr.S.D.Fla.1988).

This court has located three cases other than *Phillips* in which the respective courts reached results similar to that in *Phillips, i.e.,* that, in certain factual settings materially distinct from that of the instant case, a bankruptcy filing was held to subsequently affect the status of a partnership as a potential debtor: *In re Sunset Developers,* 69 B.R. 710, 712–13 (Bankr.D.Idaho 1987); *In re Minton Group, Inc.,* 27 B.R. 385, 390–91 (Bankr.S.D.N.Y.1983), *aff'd,* 46 B.R. 222 (S.D.N.Y.1985); and *In re Harms,* 10 B.R. 817, 821–22 (Bankr.D.Colo.1981). However, none of these cases involved a situation where the partnership's bankruptcy was filed by a non-debtor who clearly had authority to make a bankruptcy filing for the partnership absent the previous bankruptcy filing of another partner.

In *Harms,* the trustee of a debtor-partner sought a determination that the debtor-partner's bankruptcy filing dissolved his partnerships. Without citing or discussing 11 U.S.C. § 365(e), the court determined that 11 U.S.C. § 365(c)(1)[4] precluded the trustee from assuming the executory partnership agreements in question. 10 B.R. at 831–22. In *Minton Group,* the issue presented also involved the power of a trustee to assume a partnership agreement, and § 365(e) was again not cited. 27 B.R. at 390–91.

*Sunset Developers* involved a co-general partner who first filed his own individual

---

3. This Code section provides as follows:
   (e)(1) Notwithstanding a provision in an executory contract or unexpired lease, or in applicable law, an executory contract or unexpired lease of the debtor may not be terminated or modified, and any right or obligation under such contract or lease may not be terminated or modified, at any time after the commencement of the case solely because of a provision in such contract or lease that is conditioned on—
   (A) the insolvency or financial condition of the debtor at any time before the closing of the case;
   (B) the commencement of a case under this title; or
   (C) the appointment of or taking possession by a trustee in a case under this title or a custodian before such commencement....

4. This Code section provides as follows:
   (c) The trustee may not assume or assign any executory contract or unexpired lease of the debtor, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties, if—
   (1)(A) applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance to an entity other than the debtor or the debtor in possession whether or not such contract, or lease, prohibits or restricts assignment of rights or delegation of duties; and
   (B) such party does not consent to such assumption or assignment; ...

bankruptcy case and thereafter filed an involuntary petition against the partnership. 69 B.R. at 711. The non-debtor general partner objected to the filing. *Id.* The *Sunset Developers* court held, similar to the conclusions reached by the respective courts in *Harms* and *Minton Group,* that § 365(c) precluded the debtor-partner from assuming the partnership agreement. *Id.* at 713. Since § 365(c) was found to prevent the debtor-partner from assuming the partnership agreement, the *Sunset Developers* court held that § 365(e) did not apply to the partnership agreement. *Id.*

In each of these cases, as well as in *Phillips,* the respective courts were confronted with the issue of the power of a debtor-partner to proceed on behalf of a partnership. When such an issue is raised, the impact of § 365(c) is predominant, since that Code section limits the right of a debtor-partner to assume and act in conformity with an executory partnership agreement.

However, in the instant fact situation, it is a non-debtor partner who has made the pertinent partnership bankruptcy filing on the partnership's behalf. Section 365(c) does not come into play in this situation, because a debtor-partner's actions are not in question. The only bankruptcy law issue presented is whether McMurtrie's filing terminated the instant partnership, precluding any actions of Asbell, even with the apparent approval of McMurtrie. In this situation, the only section of § 365 which is relevant is § 365(e). All of the pertinent cases appear to agree that a partnership agreement is an executory contract unless it has been terminated by a state court decree on grounds other than those related to a partner's bankruptcy filing, as in *Phillips.*

The Greater, in its final submission, argues that § 365 "has no relationship in this matter" because it is not claiming that the Debtor's insolvency, but that of a "non-debtor" (McMurtrie), dissolved the partnership. However, it is the bankruptcy of McMurtrie which gives rise to The Greater's argument. It is the effect of § 365(e)(1) arising from McMurtrie's filing which counteracts this argument.

If 15 Pa. § 8353(5) were read as broadly as The Greater suggests, *i.e.,* any bankruptcy filing of any general partner in a general partnership or the partnership itself would preclude any filing of a bankruptcy case on the partnership's behalf, it would be impossible to file a bankruptcy case for a partnership. The filing of bankruptcy by any general partner would, under any circumstances, preclude a bankruptcy filing by the partnership. Moreover, the general partnership's own filing would dissolve it and preclude its filing. We conclude that § 365(e) was intended to present such an anomaly from occurring.

## D. CONCLUSION

We therefore decide that, in the present factual setting, the reasoning of *Rittenhouse Carpet* and *Petralex* controls. The Debtor should not be deemed terminated and ineligible to file a bankruptcy case solely because of McMurtrie's bankruptcy filing. That aspect of the Greater's Motion seeking to dismiss this case on the ground that McMurtrie's bankruptcy filing dissolved the Debtor must therefore be denied.[5]

### ORDER

AND NOW, this 6th day of October, 1993, upon consideration of that aspect of the Motion of The Greater New York Savings Bank ("The Greater") to Dismiss or Lift the Automatic Stay ("the Motion") which seeks to dismiss this case, and the Briefs of the parties addressing this issue, it is hereby

---

5. The Debtor also argues that, even if the Debtor were deemed dissolved pursuant to 15 Pa.C.S. § 8353(5), dismissal of this case would nevertheless be inappropriate because the Debtor would not cease to exist, but would continue to exist until the winding up of its affairs would be completed. *See* 15 Pa.C.S. § 8352. However, a resolution that the bankruptcy could continue only to effect a winding up of the Debtor's affairs would appear to restrict the Debtor to proposing a liquidating plan. The Debtor's actual proposed plan contemplates a continuation of the Debtor's business of owning and operating its apartment building. Therefore, we do not believe that the Debtor actually supports the logical conclusions of this alternative argument, and we therefore do not rely on this argument as a basis for our result.

ORDERED that the instant bankruptcy case should not be dismissed on the grounds asserted by The Greater, and that aspect of the Motion seeking dismissal of this case is therefore DENIED.