**In re DIXIE MANAGEMENT &
INVESTMENT, LIMITED
PARTNERS, Debtor.**

**Ralph Duncan and Lisa
Cantrell, Plaintiffs**

**v.**

**Dixie Management & Investment,
Limited Partners and Mitosis,
Inc., Defendants.**

**Bankruptcy No. 5:08–bk–73874.
Adversary No. 5:10–ap–7184.**

United States Bankruptcy Court,
W.D. Arkansas,
Fayetteville Division.

May 9, 2011.

Stanley V. Bond, Attorney at Law, Fayetteville, AR, for Debtor.

Charles L. Harwell, Cypert, Crouch, Clark & Harwell, PLLC, Springdale, AR, for Plaintiffs.

## ORDER

BEN BARRY, Bankruptcy Judge.

Before the Court is the complaint of Ralph Duncan and Lisa Cantrell [Duncan and Cantrell] for a declaratory judgment, and a response to the complaint by the debtor, Dixie Management & Investment, Limited Partners [Dixie]. Duncan and Cantrell argue, and request the Court to find, that upon the filing of the debtor's bankruptcy petition, the debtor became a disassociated member of Moberly Investment Group, LLC [MIG] under the terms of MIG's Operating Agreement [OA] and Arkansas Code § 4–32–802(a)(4)(B).

The Court has jurisdiction over this matter under 28 U.S.C. § 1334 and 28 U.S.C. § 157, and it is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O). The following opinion constitutes findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.

At the trial held April 5, 2011, the parties introduced the OA into evidence as a stipulated exhibit. Duncan and Cantrell argue that under the terms of the OA, when Dixie filed its bankruptcy petition on September 29, 2008, an event of disassociation occurred and Dixie ceased to be a member of MIG. Dixie argues that the OA operates as an executory contract between Dixie and MIG, and that 11 U.S.C. § 365(e)(1) prevents the modification or termination of the executory contract to the detriment of Dixie.[1] Additionally, even if the OA is not an executory contract, § 541(c)(1) likewise prevents the modification or termination of Dixie's interest based upon the commencement of a

---

**1.** Section 365(e)(1) states:
Notwithstanding a provision in an executory contract or unexpired lease, or in applicable law, an executory contract or unexpired lease of the debtor may not be terminated or modified, and any right or obligation under such contract or lease may not be terminated or modified, at any time after the commencement of the case solely because of a provision in such contract or lease that is conditioned on—

(A) the insolvency or financial condition of the debtor at any time before the closing of the case;
(B) the commencement of a case under this title; or
(C) the appointment of or taking possession by a trustee in a case under this title or a custodian before such commencement.

bankruptcy case.[2]  Finally, Dixie argues in the alternative that if an event of disassociation did occur upon the filing of the petition, the LLC subsequently dissolved under the terms of the OA because the remaining members did not consent to the continuation of the business on or before 90 days following the disassociating event.

■ As a preliminary matter, the Court will address the nature of the OA and whether it is an executory contract or a property interest, or both.  The Eighth Circuit has adopted the "Countryman" definition of an executory contract.  *In re Daugherty Const., Inc.*, 188 B.R. 607, 612 (Bankr.D.Neb.1995) (citing *In re Knutson*, 563 F.2d 916, 917 (8th Cir.1977)).  Under the Countryman definition, "contracts are executory if they are so far unperformed that the failure of either party to complete performance would constitute a material breach excusing the performance of the other."  *Id.*  In this instance, neither side introduced any evidence or presented any testimony from which the Court can determine whether the OA is an executory contract.

■ Regardless, even if the Court found the OA to be an executory contract, Dixie did not assume the contract.  Section 365(d)(2) allows an executory contract to be assumed anytime prior to confirmation.[3]  In its *Second Plan of Reorganization*, Dix-

ie states that "[t]he Debtor has determined that the executory contracts and unexpired leases listed in Schedule G to its Chapter 11 Petition, if any, shall be assumed as of the effective date of any subsequently approved Chapter 11 Plan of Reorganization."  However, schedule G, which was filed on November 12, 2008, does not list any executory contracts or unexpired leases and the debtor affirmatively states on Schedule G that the debtor does not have any executory contracts or unexpired leases.  Without an executory contract, § 365(e)(1) is not applicable.

■ Dixie's second argument involves § 541, property of the estate.  Property of the estate consists, *inter alia*, of "all legal and equitable interests of the debtor in property as of the commencement of the case."  11 U.S.C. § 541(a)(1).  At the time the debtor filed its bankruptcy petition, it owned a 62% membership interest in MIG.  That interest, and any rights the debtor held under the OA, becomes property of the estate under § 541.  *Daugherty Const.*, 188 B.R. at 611; *see also Klingerman v. ExecuCorp, LLC (In re Klingerman)*, 388 B.R. 677, 679 (Bankr.E.D.N.C. 2008); *In re Garrison–Ashburn, L.C.*, 253 B.R. 700, 707 (Bankr.E.D.Va.2000) ("There is no question that the economic rights, that is the membership interest, becomes property of the estate.").

**2.**  Section 541(c)(1) states:

Except as provided in paragraph (2) of this subsection, an interest of the debtor in property becomes property of the estate under subsection (a)(1), (a)(2), or (a)(5) of this section notwithstanding any provision in an agreement, transfer instrument, or applicable nonbankruptcy law—
(A) that restricts or conditions transfer of such interest by the debtor;  or
(B) that is conditioned on the insolvency or financial condition of the debtor, on the commencement of a case under this title, or on the appointment of or taking possession by a trustee in a case under this title or a custodian before such commencement, and

that effects or gives an option to effect a forfeiture, modification, or termination of the debtor's interest in property.

**3.**  Section 365(d)(2) states:

In a case under chapter 9, 11, 12, or 13 of this title, the trustee may assume or reject an executory contract or unexpired lease of residential real property or of personal property of the debtor at any time before the confirmation of a plan but the court, on the request of any party to such contract or lease, may order the trustee to determine within a specified period of time whether to assume or reject such contract or lease.

The OA attempts to alter Dixie's interest. Under the terms of the OA, a person ceases to be a member of the LLC upon the occurrence of one of six events of disassociation. One of the enumerated events is a "voluntary or involuntary action indicating bankruptcy, insolvency, liquidation, reorganization or arrangement for relief from debt." (Stip. Ex. 1 ¶ 7.2.) Similarly, under the Arkansas Code, a person ceases to be a member of an LLC when the member "[f]iles a voluntary petition in bankruptcy." Ark.Code. Ann. § 4-32-802(a)(4)(B) (Repl.2001). However, under § 541(c)(1), an interest of the debtor in property becomes property of the estate, "notwithstanding any provision in an agreement ... that is conditioned on the insolvency or financial condition of the debtor, [or] on the commencement of a case under this title...." 11 U.S.C. § 541(c)(1)(B). Under § 541(c)(1), Dixie's membership in MIG continues to exist and constitutes property of the estate, despite the conflicting provision in the OA and contrary state law.

The Court holds that the OA's language regarding the alleged disassociation of a member based on the filing of its bankruptcy petition is in contravention of the bankruptcy code, specifically, § 541(c)(1), and, therefore, is ineffective. Additionally, under the Supremacy Clause of the United States Constitution, the Court holds that the Arkansas statute that recognizes the disassociation of a member upon the filing of a voluntary petition in bankruptcy is not enforceable because it is in conflict with federal law. *See Daugherty Const.*, 188 B.R. at 611. Further, under § 363(*l*), Dixie is permitted the use and benefit of its interest in the LLC and has the right to continue as a member of the LLC. *Daugherty Const.*, 188 B.R. at 611–12; 11 U.S.C. § 363(*l*); *see also LaHood v. Covey (In re LaHood)*, 437 B.R. 330, 336 (Bankr.

C.D.Ill.2010) ("bankruptcy estate received debtor's economic and non-economic rights"); *Klingerman*, 388 B.R. at 679; *Movitz v. Fiesta Inv., LLC (In re Ehmann)*, 319 B.R. 200, 206 (Bankr.D.Ariz. 2005) ("Trustee has all of the rights and powers ... that the Debtor held as of the commencement of the case."); *but see Garrison–Ashburn*, 253 B.R. at 708 (finding that bankruptcy estate only has the rights of an assignee).

Duncan and Cantrell filed their declaratory judgment action for the Court to determine whether Dixie became a disassociated member upon the filing of its bankruptcy petition under either the terms of MIG's OA or pursuant to Arkansas law. The Court finds that Dixie did not become a disassociated member upon filing its petition in accordance with § 541(c)(1)(B). Consequently, the Court does not need to address the debtor's argument in the alternative: that if an event of disassociation did occur upon the filing of the petition, MIG subsequently dissolved under the terms of the OA because the remaining members did not consent to the continuation of the business on or before 90 days following the disassociating event.

For the reasons stated above, the Court finds that the specific event of disassociation in the OA relating to the filing of a "voluntary or involuntary action indicating bankruptcy, insolvency, liquidation, reorganization or arrangement for relief from debt," and the Arkansas Code provision recognizing disassociation upon the filing of a voluntary petition in bankruptcy are invalid. Dixie did not become a disassociated member of the LLC upon the filing of its petition.

IT IS SO ORDERED.